Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| VILLA BLANCA LTD, ALMACO CAPITAL, CORP., ATTENURE HOLDINGS TRUST 2 Y HRH PROPERTY HOLDINGS, LLC<br><br>Apelantes<br><br>v.<br><br>MAPFRE PRAICO INSURANCE COMPANY<br><br>Apelado | TA2026AP00120<br><br>cons. con<br><br>TA2026CE00176 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso número: CG2019CV03331<br><br>Sobre: Daños, Seguros-Incumplimiento Aseguradoras Huracanes Irma/María, Sentencia Declaratoria |
| VILLA BLANCA LTD, ALMACO CAPITAL, CORP., ATTENURE HOLDINGS TRUST 2 Y HRH PROPERTY HOLDINGS, LLC<br><br>Peticionarios<br><br>v.<br><br>MAPFRE PRAICO INSURANCE COMPANY<br><br>Recurrido | | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso número: CG2019CV03331<br><br>Sobre: Daños, Seguros-Incumplimiento Aseguradoras Huracanes Irma/María, Sentencia Declaratoria |

Panel integrado por su presidenta, la juez Brignoni Mártir, el juez Salgado Schwarz y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# S E N T E N C I A

En San Juan, Puerto Rico, a 22 de junio de 2026.

Comparecen Villa Blanca LTD, Almaco Capital Corp., Attenure Holdings Trust 2 y HRH Property Holdings LLC, mediante el recurso núm. TA2026AP00120, y nos solicitan que revoquemos la *Sentencia* emitida el 9 de diciembre de 2025, por el Tribunal de Primera Instancia, Sala Superior de Caguas, la cual fue notificada

el 10 del mismo mes y año. Mediante el referido dictamen, el foro primario declaró No Ha Lugar la *Demanda* de epígrafe. Sin embargo, concedió a favor de las apelantes la suma neta de $118,256.54, reconocida por MAPFRE Praico Insurance Company, conforme al estimado de daños, así como otras partidas adicionales.

De igual forma, mediante el recurso núm. TA2026CE00176, las apelantes nos solicitan que revoquemos la *Resolución* emitida por el foro primario el 22 de enero de 2026, notificada el 28 del mismo mes y año. Mediante esta, declaró Ha Lugar el *Memorando de costas* […], presentado por MAPFRE. En consecuencia, ordenó a las apelantes a pagar a MAPFRE la suma de $141,904.35, correspondiente a costas,[1] así como $19,250.00 por concepto de los honorarios de abogado posteriores a una oferta de sentencia.[2]

Por los fundamentos que se exponen a continuación, se confirma la *Sentencia* apelada. En cuando al recurso núm. TA2026CE00176, se expide el auto discrecional solicitado y se modifica la *Resolución* recurrida.

**I**

El 5 de septiembre de 2019, Villa Blanca LTD (Villa Blanca), Almaco Capital Corp., (Almaco), Attenure Holdings Trust 2 (Attenure) y HRH Property Holdings LLC (HRH; en conjunto, las apelantes) presentaron una *Demanda* sobre incumplimiento contractual, dolo y sentencia declaratoria, en contra de MAPFRE Praico Insurance Company (MAPFRE o la apelada).[3] Entre otros remedios, solicitaron cobrar la indemnización del seguro para resarcir las pérdidas causadas por el Huracán María, al amparo de la póliza de seguro que MAPFRE emitió a beneficio de Villa Blanca y Almaco.

---

[1] Conforme a la Regla 44.1(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(b).
[2] Ello, conforme a la Regla 35.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 35.1.
[3] Véase, Entrada núm. 1 de SUMAC TPI en el caso núm. CG2029CV0331.

Asimismo, en la *Demanda* alegaron que MAPFRE rehusó pagar la indemnización, en contravención a los términos de la póliza y a las disposiciones aplicables al manejo de las reclamaciones de seguro en Puerto Rico, las cuales se incorporan por operación de ley a los términos de la póliza que MAPFRE les vendió. Señalaron, además, que MAPFRE se negó a reconocer el alcance y el valor de los daños a la propiedad de Villa Blanca. Sobre esos extremos, las apelantes alegaron que el ajustador de reclamaciones de MAPFRE subvaloró el costo de las reparaciones de la mayoría de las partes de la propiedad asegurada. Asimismo, sostuvieron que MAPFRE admitió que la propiedad sufrió daños a causa del Huracán María. En síntesis, las apelantes solicitaron al foro primario que emitiera una sentencia declaratoria a su favor y les concediera la suma de $2,428,638.14, menos el deducible aplicable y las sumas pagadas anteriormente por MAPFRE.

Tras varios trámites procesales, el 14 de enero de 2021 MAPFRE presentó una *Contestación a Demanda* en la que negó las alegaciones de incumplimiento contractual y violaciones al Código de Seguros de Puerto Rico.[4] En apretada síntesis, MAPFRE sostuvo que tramitó la reclamación de las apelantes de forma diligente, conforme a los términos de la póliza. Entre sus defensas afirmativas, la apelada expuso que cumplió con sus obligaciones conforme a los términos y condiciones de la póliza. Asimismo, que investigó justa y adecuadamente la reclamación de las apelantes, que estuvo disponible para discutir la reclamación, que los daños alegados son excesivos, especulativos y no se ajustan a costos razonables y que hay ausencia de causa de acción al amparo de la Ley Núm. 247-2018.[5] Asimismo, que las apelantes reclamaron daños que están

---

[4] Véase, Entrada núm. 47 de SUMAC TPI en el caso núm. CG2029CV0331.
[5] Esta ley enmendó el *Código de Seguros de Puerto Rico*, a los fines de añadirle un nuevo Artículo 27.164, 27 LPRA sec. 2716d, sobre "remedios civiles".

excluidos de la cubierta de la póliza o no son el resultado del peligro asegurado de "Tormenta de Viento, Huracán o Granizo", según contemplado por las pólizas. Finalmente, MAPFRE solicitó al foro primario que declarara No Ha Lugar la *Demanda* de epígrafe.

El juicio en su fondo se celebró del 21 al 29 de octubre de 2025.[6] La prueba presentada por las apelantes consistió en el testimonio del Ing. Andre Melo (ingeniero Melo), quien fue cualificado como perito forense de la parte apelante, sin objeción de MAPFRE y estuvo asistido por el traductor Sergio Castro. Asimismo, presentaron el testimonio de Michael A. Fried (perito Fried), ajustador de seguros públicos, quien fue cualificado como perito en reclamaciones de seguros y estimador de daños, sin objeción de MAPFRE, y estuvo igualmente asistido por el traductor Sergio Castro.

Las apelantes también presentaron como testigo a Ana S. Álvarez Torre (Álvarez Torre), contable en Almaco, socio administrador de Villa Blanca, quien declaró sobre las labores de mantenimiento realizadas en la propiedad antes del paso del Huracán María. La testigo indicó que, al día siguiente al huracán, fue a la propiedad, pero no pudo acceder; que solo la vio desde su auto y que regresó alrededor del día 24 de septiembre y pudo entrar.

Como prueba documental de la parte apelante el foro *a quo* admitió una serie de *exhibits*. Asimismo, admitió cierta prueba de la parte apelante, con la objeción de MAPFRE a su admisibilidad.

Por su parte, MAPFRE presentó el testimonio del Ing. Carlos Sanjurjo Castillo (ingeniero Sanjurjo), el cual fue cualificado por el foro primario como perito en ingeniería forense, sin reparo de la parte apelante. Este rindió un informe y testificó sobre los

---

[6] Véase, Entradas núm. 251 a 256 de SUMAC TPI en el caso núm. CG2029CV0331.

documentos y fotos que utilizó para preparar dicho informe.[7] MAPFRE presentó, además, como testigo a la Arq. Maryenid Abreu Canales, quien posee un bachillerato en arquitectura y una certificación de Arquitecta en Entrenamiento. Además, de 2019 a 2021 se desempeñó como inspectora de condominios, residencias y edificios comerciales para ROV Engineering (ROV) y, después de concluir las inspecciones, preparó el estimado de costos de reparación de los daños que observó.

La apelada también presentó el testimonio de Omar Acevedo Avilés (Acevedo Avilés), quien trabaja en MAPFRE como ajustador de reclamaciones de propiedad. Asimismo, el testimonio del Lcdo. Mario Oronoz Rodríguez (licenciado Oronoz Rodríguez), quien es ajustador independiente y manejó reclamaciones residenciales y comerciales presentadas por asegurados de MAPFRE.

Tras aquilatar la prueba que ambas partes presentaron durante el juicio en su fondo, el 9 de diciembre de 2025, el foro *a quo* emitió la *Sentencia* apelada, la cual fue notificada al día siguiente.[8] Mediante esta, declaró No Ha Lugar la *Demanda* de epígrafe. Sin embargo, concedió a favor de las apelantes la suma de $100,823.23, reconocida por MAPFRE, conforme al ajuste del estimado de daños de ROV.

Asimismo, adjudicó $13,564.26 adicionales, correspondientes a la partida de sellado de techo y otros $3,869.35, por concepto de los pagos efectuados por Villa Blanca a Lamar Construction ($1,500.00), Nelson Rodríguez (NR Maintenance Group) ($139.50), y Junior Electrical Service ($2,229.85). De este modo, el total neto de las partidas que MAPFRE debe pagarle a las apelantes, en virtud de la *Sentencia* apelada, asciende a $118,256.54. Así, luego de

---

[7] Véase, *Minuta* de la vista celebrada el 29 de octubre de 2025, transcrita el 21 de noviembre de ese año. Entrada núm. 256 de SUMAC TPI en el caso núm. CG2029CV0331.
[8] Véase, Entrada núm. 258 de SUMAC TPI en el caso núm. CG2029CV0331.

considerar la prueba estipulada y presentada por las partes durante el juicio en su fondo, el foro primario acogió ocho determinaciones de hechos estipulados por las partes y formuló 243 determinaciones de hechos.

Así, conforme a las determinaciones de hechos probados, el foro *a quo* concluyó en la *Sentencia* apelada, que Villa Blanca no presentó prueba alguna que llevara a concluir que la aseguradora incumplió con sus obligaciones durante el manejo de la reclamación. Por tanto, rechazó concluir que MAPFRE hubiese actuado de forma dolosa o de mala fe. Asimismo, el foro primario resolvió que las apelantes no presentaron prueba suficiente para establecer que sufrieron los daños que dice el Informe del perito Fried (*exhibit* 16 de la parte demandante), ni que amerite los costos de reparación que este reclama como necesarios.

En lo pertinente, el foro *a quo* destacó que el testimonio del perito de Villa Blanca no le mereció credibilidad y que las fotografías presentadas y admitidas en evidencia no muestran el nivel de daño que el perito Fried y la prueba pericial de las apelantes sostienen. De igual forma, el foro primario estableció que no hay fotos ni estimados de daños, tanto del exterior como del interior de los apartamentos. Consideró que lo anterior hubiera sido necesario para demostrar la necesidad de incurrir en la suma de $3,365,869.27, como requisito para devolver la propiedad a la condición en que esta se encontraba, antes del paso del Huracán María.

De forma cónsona, el foro primario concluyó que la prueba pericial de MAPFRE le resultó más creíble y razonable que la de Villa Blanca. Asimismo, consideró que el ingeniero Sanjurjo refutó efectivamente las conclusiones de los peritos de Villa Blanca y que, además, demostró que estas no estaban basadas en la práctica de la ingeniería y la industria de la construcción local. Por el contrario,

concluyó que se apoyaban en una serie de conjeturas y especulaciones que no se ajustaban a la realidad. Sobre esos extremos, el foro *a quo* coincidió con la opinión del ingeniero Sanjurjo a los fines de que no hay evidencia que sustente que procede el reemplazo de todas las ventanas del complejo, así como tampoco la sustitución del sellado elastomérico de techo por una membrana de bitumen modificado.

De este modo, el foro primario concluyó que, conforme a la evidencia desfilada para probar los daños, así como de conformidad con el texto de la póliza, resulta más razonable el estimado preparado por el perito de MAPFRE, según ajustado por Acevedo Avilés, que el preparado por los peritos de Villa Blanca. Ello, en la medida de que el estimado de los peritos de Villa Blanca no fue ajustado conforme a los términos, límites y condiciones de la póliza, ni tampoco establece incumplimiento contractual alguno en contra de MAPFRE.

A su vez, el foro *a quo* le adjudicó credibilidad al testimonio de Acevedo Avilés sobre la manera en que se aplicaron los términos y condiciones de la póliza a la reclamación judicial. Asimismo, estimó que el ajuste de la reclamación judicial sometido en evidencia es correcto y válido. Por tanto, basado en este, adjudicó las cuantías que procedían.

En cuanto al alegado incumplimiento contractual de MAPFRE, el foro primario dispuso que la aseguradora notificó un ajuste y oferta que detallaba los daños reconocidos y la aplicación de los deducibles correspondientes. Asimismo, que una vez iniciado el litigio el asegurado volvió a someter documentos que variaron su reclamación -esta vez, a través del informe de sus peritos- y la aseguradora nuevamente cumplió con su obligación de investigar, ajustar y hacer una oferta razonable. A juicio del foro *a quo*, estas acciones, ofertas y ajustes se presumen hechas de buena fe. Por

tanto, consideró que MAPFRE realizó una demostración *prima facie* de haber cumplido con su obligación contractual bajo la póliza de seguro, así como de conformidad con las disposiciones del Código de Seguros. De este modo, concluyó que hay ausencia total de prueba para sustentar el alegado incumplimiento contractual imputado a MAPFRE.

De otra parte, el foro primario hizo constar en la *Sentencia* apelada que la aplicación de un deducible porcentual de 2% está regulado, debido a que opera lo dispuesto en el Artículo 27.081(3)(a) del Código de Seguros, 26 LPRA sec. 2708a(3)(a), el cual dispone lo siguiente:

> Ningún asegurador ofrecerá en Puerto Rico póliza alguna que establezca deducibles que se expresen como un porcentaje del valor de la propiedad asegurada, **a menos que el valor de dicha propiedad sea acordado de antemano en la póliza (*agreed value*) entre el asegurado y el asegurador**.

(Negrillas suplidas).

Sobre esos extremos, el foro *a quo* concluyó que en las declaraciones de la póliza suscrita por las partes están los límites de cubierta para cada propiedad asegurada ("*property at your premises*") y que, para cada uno, se dice que el monto allí establecido es "*agreed value*". Por tanto, en este caso, el valor de propiedad asegurada fue acordado de antemano en la póliza (*agreed value*) entre el asegurado y el asegurador. Asimismo, el foro primario destacó que, durante el juicio, las apelantes no desfilaron prueba alguna para demostrar que Villa Blanca y MAPFRE no acordaron de antemano en la póliza cuál era el valor de la propiedad asegurada.

Ante esa realidad, el foro primario, por un lado, reconoció que el Artículo 27.081 del Código de Seguros, 26 LPRA sec. 2708a, dispone que el deducible mínimo requerido para una póliza aplicable al peligro de tormenta (*windstorm*) es del uno por ciento (1%) del monto asegurado, no mayor de quinientos dólares ($500). Sin

embargo, razonó que ello no significa que el máximo de deducible para la reclamación de las apelantes fuera de $500.

El foro *a quo* consideró que la obligación de la aseguradora de ofrecer el deducible mínimo de uno por ciento (1%) del límite de la póliza aplicable al peligro de tormenta (*windstorm*) se activaría en el momento que el asegurado solicitara el límite mínimo. Asimismo, que una vez solicitado el deducible mínimo el asegurador no puede negarse a ofrecerlo, lo cual a su vez conlleva un aumento de prima para el asegurado.

Ante ese cuadro, concluyó que, durante el juicio, las apelantes no desfilaron prueba alguna de que le solicitaran a MAPFRE el deducible mínimo u otro menor al dos por ciento (2%). En consecuencia, habiéndose pactado en la póliza[9] el deducible de un dos por ciento (2%) del límite asegurado para tormentas de viento o *windstorm,* el foro primario concluyó que MAPFRE actuó correctamente al aplicar un deducible de dos por ciento (2%), tras efectuar el ajuste del estimado de daños de ROV.

En desacuerdo con la *Sentencia* apelada, el 29 de diciembre de 2025, las apelantes presentaron una *Solicitud de determinaciones de hechos adicionales, moción de reconsideración y solicitud de nuevo juicio.*[10] Tras evaluarla, el foro *a quo* la declaró No Ha Lugar, mediante una *Resolución* emitida el 30 de diciembre de 2025, notificada el 7 de enero de 2026.[11]

En el interín, el 22 de diciembre de 2025, las apelantes presentaron un *Memorando de costas.*[12] En igual fecha, MAPFRE presentó un *Memorando de costas y solicitud de remedios a tenor con la Regla 35.1 de Procedimiento Civil.*[13] En este, MAPFRE expuso que,

---

[9] *"Supplemental Form Declaration* For CP0330 1012 – Puerto Rico - *Windstorm Percentage Deductible Clauses".*
[10] Véase, Entrada núm. 267 de SUMAC TPI en el caso núm. CG2019CV03331.
[11] Véase, Entrada núm. 269 de SUMAC TPI en el caso núm. CG2019CV03331.
[12] Véase, Entrada núm. 264 de SUMAC TPI en el caso núm. CG2019CV03331.
[13] Véase, Entrada núm. 265 de SUMAC TPI en el caso núm. CG2019CV03331.

el 1 de octubre de 2025, les notificó a las apelantes, por correo certificado con acuse de recibo, una oferta de sentencia por la suma de **$250,000.00**, al amparo de la Regla 35.1 de Procedimiento Civil, 32 LPRA Ap. V. R. 35.1. Asimismo, expresó que dicha parte no aceptó la oferta y que, mediante la *Sentencia* apelada, el foro *a quo* declaró No Ha Lugar la *Demanda* y le ordenó a pagar a las apelantes únicamente la suma de **$118,256.54**. Por tanto, razonó que, por tratarse de una suma menos favorable que la oferta extendida, procedía la imposición de los honorarios de abogado incurridos con posterioridad a dicha oferta. Posteriormente, el 5 de enero de 2026, MAPFRE también presentó una *Oposición a memorando de costas de la parte demandante.*[14]

En cuanto a los memorandos de costas, el 22 de enero de 2026, el foro primario emitió una *Resolución*, que fue notificada el 28 del mismo mes y año.[15] En virtud de esta, declaró No Ha Lugar el *Memorando de costas* presentado por las apelantes, mientras que declaró Ha Lugar el *Memorando de costas y solicitud de remedios a tenor con la Regla 35.1 de Procedimiento Civil* presentado por MAPFRE.

En consecuencia, ordenó a las apelantes a pagarle a MAPFRE la suma de $141,904.35, por concepto de costas, conforme a la Regla 44.1(b) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(b). Asimismo, adjudicó otros $19,250.00 a favor de MAPFRE. Dicho monto corresponde a los honorarios de abogado incurridos con posterioridad a la oferta de sentencia, de conformidad con la Regla 35.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 35.1. Las sumas concedidas por el foro primario a favor de MAPFRE por concepto de costas y honorarios de abogados totalizan un monto de $161,154.35.

---

[14] Véase, Entrada núm. 268 de SUMAC TPI en el caso núm. CG2019CV03331.
[15] Véase, Entrada núm. 272 de SUMAC TPI en el caso núm. CG2019CV03331.

Inconformes con la *Sentencia* apelada, el 6 de febrero de 2026, las apelantes acudieron ante este Foro mediante el recurso de apelación núm. TA2026AP00120. En este, adujeron que el foro primario cometió los siguientes errores:

Erró el TPI en la apreciación de la prueba presentada en juicio.

Erró el TPI al no concederle intereses por mora y honorarios a los apelantes al amparo del Código de Seguros de Puerto Rico.

Erró el TPI al no conceder un nuevo juicio cuando la sentencia final demostró la necesidad de presentar el testimonio de los cinco (5) testigos de los apelantes que el TPI excluyó tres (3) semanas antes de que comenzara el juicio en su fondo.

Posteriormente, el 16 de febrero de 2026, las apelantes presentaron la *Petición de certiorari* núm. TA2026CE00176.[16] Ello, a los fines de solicitar la revisión de la *Resolución* notificada el 28 de enero de 2026, en la medida que el foro *a quo* les declaró No Ha Lugar el *Memorando de Costas*.[17] En virtud de esta, adujo que el foro *a quo* cometió los siguientes errores:

Erró el TPI al otorgarle costas a MAPFRE a pesar de esta ser la parte perdidosa del caso por haberse dictado sentencia otorgando un remedio a los peticionarios y ordenando a MAPFRE a pagar por los daños ocasionados por el Huracán María.

Erró el TPI al otorgar de manera automática honorarios a favor de MAPFRE al amparo de la Regla 35.1 de Procedimiento Civil, contrario a lo establecido por nuestro Tribunal Supremo y a pesar de no haber determinación alguna de temeridad o arbitrariedad.

Por su parte, el 24 de febrero de 2026, MAPFRE presentó una *Oposición a expedición de auto de certiorari.*[18] En esencia, sostuvo que el ajuste por los daños, concedido por el foro primario luego de evaluar los términos y condiciones de la póliza, no convierte a las apelantes en parte prevaleciente, a favor de la cual proceda conceder

---

[16] Mediante una *Resolución* emitida el 17 de febrero de 2026, notificada el día 19 del mismo mes y año, este Tribunal ordenó la consolidación de los recursos núm. TA2026AP00120 y TA2026CE00176. Véase, Entrada núm. 8 de SUMAC TA en el caso núm. TA2026AP00120.

[17] Véase, Entrada núm. 1 de SUMAC TA en el caso núm. TA2026CE00176.

[18] Véase, Entrada núm. 10 de SUMAC TA en el caso núm. TA2026AP00120.

costas. Ello, toda vez que el foro *a quo* declaró No Ha Lugar la *Demanda.*

Asimismo, arguyó que el foro primario no incidió al imponerle a las apelantes una suma por concepto de honorarios de abogado, al amparo de la Regla 35.1 de Procedimiento Civil, *supra.* Esto, pues el foro primario dictó sentencia por una suma considerablemente menor a la oferta de sentencia extendida a las apelantes. De este modo, MAPFRE expuso que, a su juicio, procede el pago de las costas y gastos, así como los honorarios de abogado en que incurrió con posterioridad a la oferta realizada el 1 de octubre de 2025.

Así las cosas, el 19 de marzo de 2026 emitimos y notificamos una *Resolución,* en la que ordenamos que las partes presentaran una transcripción de la prueba oral estipulada (TPO).[19] Por su parte, el 27 de marzo de 2026, las apelantes presentaron una *Moción en cumplimiento de resolución.*[20] Como anejo, incluyeron la TPO de varias vistas celebradas durante el juicio en su fondo, así como de la segunda conferencia con antelación al juicio. Esto, por resultar pertinentes a los señalamientos de error primero y tercero, mediante los cuales se cuestionan, tanto la apreciación de la prueba como la denegatoria del foro *a quo* ante una solicitud de nuevo juicio.

El 29 de abril de 2026, las apelantes presentaron un *Alegato Suplementario.*[21] En esencia, sostuvieron y reiteraron que la *Sentencia* apelada contiene varias determinaciones de hechos sobre los testimonios del perito Fried y el ingeniero Melo que no están sustentadas por la prueba presentada.

Por su parte, MAPFRE compareció nuevamente el 27 de mayo de 2026, mediante un escrito intitulado *Alegato de MAPFRE en oposición a apelación.*[22] En síntesis, sostuvo que las apelantes no

---

[19] Véase, Entrada núm. 16 de SUMAC TA en el caso núm. TA2026AP00120.
[20] Véase, Entrada núm. 18 de SUMAC TA en el caso núm. TA2026AP00120.
[21] Véase, Entrada núm. 20 de SUMAC TA en el caso núm. TA2026AP00120.
[22] Véase, Entrada núm. 21 de SUMAC TA en el caso núm. TA2026AP00120.

probaron sus causas de acción, por lo que el foro primario actuó correctamente al declarar No Ha Lugar la *Demanda* de epígrafe. Razonó que la suma concedida por el foro *a quo* en la *Sentencia* apelada, no responde a actuaciones negligentes o dolosas por parte de MAPFRE. Por el contrario, considera que constituyó un remedio cónsono con los daños que el Huracán María causó a la propiedad, cubiertos por la póliza expedida, según determinados por la apelada luego del ajuste. Respecto a esos extremos, MAPFRE afirmó que es correcta la determinación del foro primario respecto a que la apelada cumplió con los términos y condiciones de la póliza, tanto en el trámite como en la investigación y en el ajuste de la reclamación.

De forma cónsona, MAPFRE sostuvo que las determinaciones de hechos del foro primario basadas en la prueba pericial, están sustentadas por la prueba desfilada en el juicio. Asimismo, argumentó que el valor probatorio que el foro primario le adjudicó a la prueba pericial, luego de evaluar la confiabilidad y credibilidad de los testimonios de los peritos, se ajustó a los factores contemplados por la Regla 702 de Evidencia, 32 LPRA Ap. VI, R. 702.

Finalmente, en cuanto al reclamo de las apelantes respecto a la denegatoria del foro *a quo* a imponer los intereses por mora solicitados, así como honorarios de abogado, MAPFRE arguyó que no concurren los requisitos para la imposición de ambos. Además, destacó que las apelantes nunca presentaron ni notificaron el *Formulario de Notificación Previo a Entablar una Acción a Tenor con el Artículo 27.164 del Código de Seguros de Puerto Rico,* 26 LPRA sec. 2716d.

De este modo, con el beneficio de evaluar la postura de ambas partes, así como luego de estudiar la TPO estipulada, que consta de una parte de la prueba que se presentó en el juicio, procedemos a disponer del recurso de epígrafe.

## II

## A

La Regla 702 regula la apreciación de la prueba pericial como sigue:

> Cuando conocimiento científico, técnico o especializado sea de ayuda para la juzgadora o el juzgador poder entender la prueba o determinar un hecho en controversia, una persona testigo capacitada como perita -conforme a la Regla 703- podrá testificar en forma de opiniones o de otra manera.
>
> El valor probatorio del testimonio dependerá, entre otros, de:
>
> (a) si el testimonio está basado en hechos o información suficiente;
>
> (b) si el testimonio es el producto de principios y métodos confiables;
>
> (c) si la persona testigo aplicó los principios y métodos de manera confiable a los hechos del caso;
>
> (d) si el principio subyacente al testimonio ha sido aceptado generalmente en la comunidad científica;
>
> (e) las calificaciones o credenciales de la persona testigo; y (f) la parcialidad de la persona testigo.

Los tribunales pueden adoptar su propio criterio en la apreciación o evaluación de la prueba pericial y hasta descartarla, aunque resulte técnicamente correcta. *Dye-Tex P.R., Inc. v. Royal Ins. Co.,* P.R., 150 DPR 658, 662-663 (2001).

Sabido es que este Tribunal Apelativo actúa, esencialmente, como foro revisor. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770 (2013). Es por ello que nuestra encomienda principal es examinar cómo los tribunales inferiores aplican el Derecho a los hechos particulares de cada caso. *Íd.* Cónsono con lo anterior, el desempeño de nuestra función revisora se fundamenta en que el Tribunal de Primera Instancia desarrolle un expediente completo que incluya los hechos que haya determinado ciertos a partir de la prueba que se le presentó. *Íd.* Es decir, nuestra función de aplicar y pautar el Derecho requiere saber cuáles son los hechos, tarea que corresponde, primeramente, al foro de instancia. *Íd.* Como foro

apelativo, no celebramos juicios plenarios, no presenciamos el testimonio oral de los testigos, no dirimimos credibilidad y no hacemos determinaciones de hechos. *Íd.*

En fin, al analizar prueba documental, prueba pericial o testimonios de testigos ofrecidos mediante declaraciones escritas, estamos en la misma posición que el Tribunal de Primera Instancia. *Ortiz et al. v. S.L.G. Meaux,* 156 DPR 488, 495 (2002). Así, "el Tribunal Apelativo tendrá la facultad para adoptar su propio criterio en la apreciación y evaluación de la Prueba pericial y hasta para descartarla, aunque resulte técnicamente correcta". *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219 (2021), citando a *González Hernández v. González Hernández*, 181 DPR 746, 776-777 (2011).

Asimismo, es norma básica que las conclusiones de derecho son revisables en su totalidad por este foro apelativo intermedio. *Dávila Nieves v. Meléndez Marín*, supra, pág. 770. Ahora bien, como norma general, los tribunales apelativos aceptan como correctas las determinaciones de hechos de los tribunales inferiores, así como su apreciación sobre la credibilidad de los testigos y el valor probatorio de la prueba presentada en la sala. *Íd.*, pág. 771.

En nuestro ordenamiento jurídico no se favorece la intervención de los foros apelativos para revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formuladas por el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Sucn. Mena Pamias et al. v. Meléndez et al.*, 212 DPR 758, 774 (2023); *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022); *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219. Ello, debido a que el foro de instancia está en mejor posición que un tribunal apelativo para llevar a cabo esta importante tarea judicial. *Dávila Nieves v. Meléndez Marín*, supra, pág. 771.

En consideración a la norma de corrección que cobija a las determinaciones realizadas por el Tribunal de Primera Instancia, cuando una parte promovente señala errores dirigidos a cuestionar la apreciación o suficiencia de la prueba, la naturaleza del derecho apelativo requiere que esta ubique al foro revisor en tiempo y espacio de lo ocurrido en el foro primario. Ello se logra utilizando alguno de los mecanismos de recopilación de prueba oral, como lo son: (1) transcripción de la prueba, (2) exposición estipulada o (3) exposición narrativa. *Pueblo v. Pérez Delgado*, 211 DPR 654, 671 (2023).

Así, si la actuación del tribunal no está desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, debe prevalecer el criterio del juez de instancia a quien corresponde la dirección del proceso. *Sierra v. Tribunal Superior*, 81 DPR 554, 572 (1959). En fin, la norma de deferencia esbozada encuentra su excepción y cede cuando la parte promovente demuestra que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad. *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012).

**B**

La Regla 110 de Evidencia, 32 LPRA Ap. VI, R. 110, le impone a la parte demandante el peso de la prueba, al disponer en su inciso (a) que el peso de la prueba recae sobre la parte que resultaría vencida de no presentarse evidencia por alguna de las partes. Ello, pues es a la parte que exige el cumplimiento de una obligación a quien le corresponde probar su existencia. *Admor. F.S.E. v. Almacén Ramón Rosa*, 151 DPR 711, 719 (2000); *H.R. Stationery, Inc. v. E.L.A.*, 119 DPR 129, 134 (1987). Esto, responde al entendido jurídico de que el peso de la prueba es una obligación que tiene la parte que afirma la cuestión en controversia, quien además debe convencer al juzgador sobre la forma particular en que ocurrieron

los hechos que alega. *Rivera Figueroa v. The Fuller Brush Co.,* 180 DPR 894, 913 (2011).

Al respecto, tanto el derecho estatutario como la jurisprudencia, han establecido que el estándar probatorio requerido en los casos civiles es el de preponderancia de prueba. Ello requiere establecer los hechos que ocurrieron con mayor probabilidad. Regla 110 de Evidencia, 32 LPRA Ap. VI, R. 110(f); *Zambrana v. Hospital,* 109 DPR 517, 521 (1980). En cuanto a controversias contractuales entre asegurados y aseguradoras, el Tribunal Supremo considera que "corresponde al asegurado el peso de establecer que su reclamación está comprendida dentro de las disposiciones del contrato de seguro, mientras que es la aseguradora quien tiene que evidenciar que aplica alguna exclusión". *Rivera Matos v. Triple-S, et al.,* 204 DPR 1010, 1022 (2020).

## c

La materia de seguros está investida de alto interés público, debido a que desempeña un trascendental rol en la protección de riesgos que amenazan la vida o el patrimonio de los ciudadanos. *Pérez Carrasquillo v. Consejo de Titulares,* 214 DPR 1033, 1049 (2024); *Serrano Picón v. Multinational Life Ins.,* 212 DPR 981, 988-989 (2023). Así, la industria de seguros está extensamente regulada por el Código de Seguros de Puerto Rico, 26 LPRA sec. 101 *et seq.,* y, de manera supletoria, por el Código Civil de Puerto Rico, 31 LPRA sec. 5311 *et seq.; Serrano Picón v. Multinational Life Ins.,* supra, pág. 989.

Un contrato de seguro es un contrato de adhesión, debido a que la aseguradora es la parte que dicta los términos y las condiciones expuestas en la póliza. *SLG Francis-Acevedo v. SIMED,* 176 DPR 372, 386 (2009); *Maderas Tratadas v. Sun*

*Alliance*, 185 DPR 880, 899 (2012). En este contexto, toda ambigüedad se debe interpretar en favor del asegurado, por vía de una interpretación razonable. *Serrano Picón v. Multinational Life Ins.*, supra; *Echandi Otero v. Stewart Title*, 174 DPR 355, 369 (2008).

El Artículo 1.020 del Código de Seguros, define el contrato de seguros como aquel en que "una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". 26 LPRA sec. 102. El propósito de todo contrato de seguro es la indemnización y la protección en caso de producirse el suceso incierto previsto en este. *OCS v. CODEPOLA*, 202 DPR 842, 858-859 (2019). En ese contexto, en el contrato de seguros se transfiere el riesgo a la aseguradora a cambio de una prima y surge una obligación por parte de esta de responder por los daños económicos que sufra el asegurado, en caso de ocurrir un evento específico. *Savary et al. v. Mun. Fajardo et al.*, 198 DPR 1014, 1023 (2017).

La relación entre un asegurado y su aseguradora se rige por lo pactado en el contrato de seguro, que constituye la ley entre las partes. *Maderas Tratadas v. Sun Alliance*, 185 DPR 880 (2012); *Lopez v. Atlantic Southern Ins. Co.*, 158 DPR 562 (2003). En cuanto al alcance de sus cláusulas, el Artículo 11.250 del Código de Seguros, establece que "[t]odo contrato de seguro deberá interpretarse globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido, o modificado [...]". 26 LPRA sec. 1125.

En lo pertinente a la investigación, ajuste y resolución de una reclamación, el Artículo 27.162 del Código de Seguros establece lo siguiente:

(1) La investigación, ajuste y resolución de cualquier reclamación se hará en el período razonablemente más corto dentro de noventa (90) días después de haberse sometido al asegurador la reclamación.

(2) En el caso de que un asegurador no pueda resolver una reclamación en el término establecido en el inciso (1) de este Artículo, deberá mantener en sus expedientes los documentos que acrediten la existencia de justa causa para exceder el término anteriormente dispuesto.

(3) El Comisionado en cualquier momento podrá ordenar la resolución inmediata de cualquier reclamación si considera que se está dilatando o retrasando indebida e injustificadamente la resolución de la misma.

26 LPRA sec. 2716b.

En *Consejo Titulares v. MAPFRE,* 208 DPR 761, 775 (2022), en el contexto de una controversia de incumplimiento contractual por el paso del Huracán María, el Tribunal Supremo reconoció que el término de noventa (90) días dispuesto en el Artículo 27.162(1) del Código de Seguros, *supra,* está sujeto a incumplimiento por justa causa. Sobre estos extremos, la Carta Normativa Núm. 2012-145D del Comisionado de Seguros dispone en su inciso (b) lo que se considerará *justa causa.* Entiéndase, cuando haya reclamaciones altamente complejas o producidas por un siniestro catastrófico, pérdidas cuantiosas o numerosas, o reclamaciones donde sea necesaria la contratación de peritos especializados. Una reclamación se entiende como resuelta una vez la empresa aseguradora notifica a su asegurado el ajuste final de la reclamación que le fue presentada. *Com. Seg. P.R. v. Antilles Ins. Co.,* 145 DPR 226, 232 (1998).

Al respecto, el Artículo 27.163 del Código de Seguros dispone expresamente que una reclamación puede ser resuelta mediante: (1) El pago total de la reclamación; (2) La denegación escrita y debidamente fundamentada de la reclamación; (3) El cierre de la reclamación por inactividad del reclamante, cuando el reclamante no coopere o no entregue la información necesaria para que el asegurador pueda ajustar la reclamación. Disponiéndose, que el

asegurador notificará inmediatamente al reclamante del cierre de esta, salvo que, en tales circunstancias, el cierre será sin perjuicio de permitir nuevamente la presentación de dicha reclamación. 26 LPRA sec. 2716c.

En *Carpets & Rugs v. Tropical Reps*, 175 DPR 615 (2009) el Tribunal Supremo resolvió que una comunicación de una aseguradora, como oferta o ajuste final de una reclamación, era admisible en evidencia. Ello, pues no se trata de una postura de "negociación conducente al contrato de transacción". *Íd.*, pág. 638. Así, concluyó que la carta de ajuste en el referido caso no se emitió "voluntariamente en un proceso de negociación conducente al contrato de transacción, sino como parte de [la] obligación [de la aseguradora] al amparo del Código de Seguros de Puerto Rico de resolver de forma final una reclamación de un asegurado [...]". *Íd.*, pág. 639.

En lo pertinente, en *Feliciano Aguayo v. MAPFRE*, 207 DPR 138 (2021), el Tribunal Supremo resolvió que, cuando la aseguradora envía una oferta razonable al asegurado, esta constituye un estimado de los daños. Asimismo, añadió que el envío de una oferta razonable también se considera "un reconocimiento de deuda al menos en cuanto a las sumas ofrecidas como ajuste". *Íd.*, pág. 165.

**D**

En el *Building and Personal Property Coverage Form*, en su Sección E inciso 7, la póliza suscrita por las partes dispone sobre la valorización de la pérdida, expresamente lo siguiente: "[w]e will determine the value of Covered Property in the event of loss or damage as follows: a. **At actual cash value as of the time of loss or damage** [...]". (Negrillas suplidas).

De igual forma, la cláusula de coaseguro de la póliza en su Sección F *Additional Conditions*, inciso 1a, dispone en lo pertinente:

We will not pay the full amount of any loss if the **value of Covered Property at the time of loss** times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.

(Negrillas suplidas).

La póliza suscrita por las partes contiene además, en la Sección G(3) del *Building and Personal Property Coverage Form*, la cubierta opcional de costo de reemplazo (sin deducción o depreciación), la cual sustituye el valor real en efectivo (*actual cash value*). Dicha Sección G(3) dispone expresamente lo siguiente:

3. **Replacement Cost**

a. Replacement cost (without deduction for depreciation) replaces Actual Cash Value in the Valuation Loss Condition of this Coverage Form.

b. [...]

c. You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.

d. We will not pay on a replacement cost basis for any loss or damage:

(1) Until the lost or damaged property is actually repaired or replaced; and

(2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

[...]

e. We will not pay more for loss or damage on a replacement cost basis than the least of **(1)**, **(2)** or **(3)**, subject to **f**. below:

(1) The Limit of Insurance applicable to the lost or damaged property;

(2) The cost to replace the lost or damaged property with other property:

(a) Of comparable material and quality; and
(b) Used for the same purpose; or

(3) The amount actually spent that is necessary to repair or replace the lost or damaged property.

**E**

En lo pertinente a seguros de propiedad que cubran los peligros de tormenta (*windstorm*), el Artículo 27.081 del Código de Seguros, 26 LPRA sec. 2708a(1)(a), dispone o siguiente:

> (1) **Excepto** como se dispone en el inciso (2) de esta sección, **ningún asegurador se negará a ofrecer el deducible mínimo requerido a un solicitante de seguros o asegurado que así se lo solicite**. Para fines de esta sección "deducible mínimo requerido" significa aquella parte del monto de una reclamación cubierta que deberá asumir el asegurado para los peligros de tormenta (*windstorm*) y terremoto, que será como se describe a continuación:
>
> (a) El uno (1) por ciento del límite de la póliza aplicable al peligro de tormenta (*windstorm*), con un deducible mínimo no mayor de quinientos dólares ($500).
>
> (2) Si la situación de excedente para tenedores de póliza de un asegurador, o el tamaño de reserva catastrófica, conforme al Capítulo 23 de este Código, o la situación del mercado mundial de reaseguros u otras razones válidas, le impiden al asegurador ofrecer el deducible mínimo requerido, éste presentará una justificación al efecto al Comisionado solicitando que se le permita ofrecer deducibles mayores. [...]

(Negrillas suplidas).

Conforme a lo dispuesto expresamente en el Artículo 27.081 inciso (1), *supra*, la obligación de la aseguradora de ofrecer el deducible mínimo de uno por ciento (1%) del límite de la póliza aplicable al peligro de tormenta (*windstorm*) se activa en el momento que el asegurado solicita el límite mínimo. Una vez solicitado el deducible mínimo, el asegurador no puede negarse a ofrecerlo, lo cual, a su vez, conlleva un aumento de prima para el asegurado.

Sobre el particular, en el "*Supplemental Form Declaration For CP0330 1012 – Puerto Rico - Windstorm Percentage Deductible Clauses*" de la póliza estipulada por las partes, se estableció que el deducible es de un 2% del límite asegurado para tormentas de viento o "*windstorm*". Asimismo, en las declaraciones de la póliza se establece, para cada uno de los "Buildings", un "Deductible Exceptions" que remite a lo siguiente: "See form CP 03 30"; que a su vez, establece un deducible de un 2% del límite asegurado para tormenta de viento.

**F**

El Artículo 27.165 del Código de Seguros de Puerto Rico, 26 LPRA sec. 2716e, autoriza, como parte de la reclamación, una partida por concepto de honorarios de abogado. La referida disposición dispone, en lo pertinente, lo siguiente:

> (1) Al recaer una sentencia o decreto por cualquiera de los tribunales contra un asegurador y en favor de cualquier asegurado nombrado o el beneficiario designado bajo una póliza o contrato ejecutado por el asegurador, el Tribunal de Primera Instancia o, en el caso de una apelación en la que prevalezca el asegurado o beneficiario, el tribunal de apelación, deberá adjudicar o decretar contra el asegurador y a favor del asegurado o el abogado del beneficiario una suma razonable como honorarios o compensación por haber procesado la demanda en la que se obtuvo una recuperación.
>
> [...]
>
> (3) Cuando se otorgue, la compensación u honorarios del abogado se incluirán en la sentencia o decreto dictado en el caso.

Para tener derecho al remedio que se consigna en el Artículo 27.165 del Código de Seguros, *supra*, es necesaria la notificación adecuada del *Formulario de Notificación Previo a Entablar una Acción Civil a Tenor con el Artículo 27.164 del Código de Seguros de Puerto Rico* (Formulario). Esto permite que el asegurador tenga la oportunidad de corregir o enmendar cualquier actuación, antes del comienzo de un pleito y así evitar litigación innecesaria. Lo anterior opera, luego de prevalecer en la reclamación instada al amparo del Artículo 27.164 del Código de Seguros, con una determinación en la que el tribunal adjudique que el asegurador obró de mala fe. El referido artículo dispone lo siguiente:

> (3) **Como condición previa a entablar una acción bajo las disposiciones de esta sección, la parte afectada deberá notificar por escrito al Comisionado y a la aseguradora de la violación. La aseguradora tendrá un término de sesenta (60) días para remediar la misma**. El Comisionado, de entender que la notificación por escrito es insuficiente o vaga, devolverá la misma y el término de sesenta (60) días no comenzará a cursar hasta tanto se subsane la deficiencia identificada por el Comisionado.
>
> (a) Dicha notificación deberá hacerse en un formulario oficial a ser provisto por el Comisionado y deberá contener la siguiente información, así como cualquier otra información que el Comisionado, a su discreción, entienda necesario [...].

[...]

(c) No procederá acción alguna si, dentro de los sesenta (60) días posteriores al recibo de la notificación, se pagan los daños o se corrigen las deficiencias o violaciones que fundamentan la notificación.

26 LPRA sec. 2716d(3)(a)(c). (Negrillas suplidas).

En *Cons. Tit. Cond. 76 Kings Court v. MAPFRE,* 208 DPR 1018, 1022 (2022), el Tribunal Supremo dispuso que el requisito de notificación previa que surge del inciso (3) del Artículo 27.164 del Código de Seguros, *supra,* es de carácter jurisdiccional.

De otra parte, en *Consejo de Titulares del Cond. Playa Azul II v. MAPFRE,* res. 26 de diciembre de 2024, 2024 TSPR 140, el Tribunal Supremo determinó y reafirmó que los honorarios de abogado al amparo del Artículo 27.165 del Código de Seguros, *supra,* "están únicamente disponibles cuando la aseguradora no remedia la situación notificada dentro de los sesenta (60) días desde que la notificación requerida por el Art. 27.164 [...] fuera hecha". En esa ocasión, el Alto Foro reiteró que la causa de acción por daños y honorarios de abogado, al amparo de los Arts. 27.164 y 27.165 del Código de Seguros, *supra,* está disponible únicamente si la aseguradora no remedia la situación dentro de sesenta (60) días. *Íd.,* págs. 1040-1041.

## G

De otra parte, el Artículo 1123 del Código Civil de 1930, 31 LPRA sec. 3173, vigente al momento de las obligaciones contraídas por las partes, disponía que, "cuando la deuda tuviere una parte líquida y otra ilíquida, podrá exigir el acreedor y hacer el deudor el pago de la primera sin esperar a que se liquide la segunda". Una deuda es líquida cuando la cuantía de dinero debida es cierta y determinada. *Ramos y otros v. Colón y otros,* 153 DPR 534, 546 (2001). La deuda se considera exigible cuando la obligación no está

sujeta a ninguna causa de nulidad y puede demandarse su cumplimiento. *Guadalupe v. Rodríguez,* 70 DPR 958, 966 (1950).

El Artículo 1053 del Código Civil de 1930, 31 LPRA sec. 3017, dispuso expresamente lo siguiente:

> Incurren en mora los obligados a entregar o hacer alguna cosa desde que el acreedor les exija judicial o extrajudicialmente el cumplimiento de su obligación.
>
> No será, sin embargo, necesaria la intimación del acreedor para que la mora exista:
>
> > (1) Cuando la obligación o la ley lo declaren así expresamente.
> > (2) Cuando de su naturaleza y circunstancias resulte que la designación de la época en que había de entregarse la cosa o hacerse el servicio, fue motivo determinante para establecer la obligación.

El cobro de intereses por mora está previsto en el Artículo 1061 del Código Civil de 1930, 31 LPRA sec. 3025. En este artículo, se establece lo siguiente:

> Si la obligación consistiere en el pago de una cantidad de dinero y el deudor incurriere en mora, la indemnización de daños y perjuicios, no habiendo pacto en contrario, consistirá en el pago de los intereses convenidos, y a falta de convenio, en el interés legal.
>
> Se considerará como legal el interés que fije la Oficina del Comisionado de Instituciones Financieras; disponiéndose que los intereses se computarán de forma simple y no compuesta.

Cónsono con lo antes expuesto, el Tribunal Supremo aclaró que, para que proceda la imposición de intereses de esta naturaleza en el cumplimiento de una obligación, es necesario que concurran los siguientes requisitos: (1) una obligación de dar o hacer; (2) que el acreedor requiera el cumplimiento al deudor judicial o extrajudicialmente; (3) que la obligación sea exigible y líquida, y esté vencida; (4) que el retraso sea imputable al deudor, y (5) que el retraso en cumplir se haya producido por la culpa del deudor. Véase, *Asociación de Salud Primaria de Puerto Rico Inc., y otros v. Estado Libre Asociado de Puerto Rico y otros v. Estado Libre*

*Asociado de Puerto Rico y otros*, 2025 TSPR 75, 216 DPR ___ (2025), pág. 13.[23]

En el contexto del contrato de seguros, el Código de Seguros obliga a las aseguradoras a realizar una investigación, ajuste y resolución de las reclamaciones que tengan ante su consideración, en un término máximo de noventa (90) días. Ello, de conformidad con lo establecido en el Artículo 27.162 del Código de Seguros, 26 LPRA sec. 2716b. En ese periodo, la aseguradora puede optar por el pago total de la reclamación o la denegatoria de esta, siempre que esté debidamente fundamentada. En cambio, puede optar por el cierre del proceso de reclamación por inactividad del reclamante.

Asimismo, el Artículo 27.161 del Código de Seguros, 26 LPRA sec. 2716a codifica las "prácticas desleales en el ajuste de reclamaciones". En lo pertinente, el inciso (19) dispone que, en el ajuste de reclamaciones, ninguna persona podrá "requerir que el asegurado o reclamante firme un relevo que pueda ser interpretado como que releva al asegurador de aquellas obligaciones contractuales que no fueron objeto de la transacción". 26 LPRA sec. 2716a(19).

De otra parte, el Código de Seguros, en su Artículo 2.030, 26 LPRA sec. 235, le confiere al Comisionado de Seguros el poder para dictar reglas y reglamentos necesarios para hacer efectiva cualquier disposición del Código. Asimismo, para reglamentar sus propios procedimientos, siguiendo el procedimiento establecido para ello en la Ley Núm. 38-2017, 3 LPRA sec. 9601 *et. seq.*[24]

Conforme lo anterior, el Comisionado de Seguros puso en vigor la Regla XLVII del *Reglamento del Código de Seguros*,

---

[23] Véase, además, *Consejo Titulares v. MAPFRE,* res. 26 de diciembre de 2024, 2024 TSPR 140, citando a L. Díez Picazo y A. Gullón, *Sistema de Derecho Civil*, 11ma ed., Madrid, Ed. Tecnos, 2023, Volumen II, Tomo 1, págs. 191-192. J. Castán Tobeñas, *Derecho Civil Español*, Común y Foral, 17ma ed., Madrid, Ed. Reus S.A., 2008, Tomo III, págs. 238-240.
[24] *Ley de Procedimiento Administrativo Uniforme de Gobierno de Puerto Rico.*

Reglamento Núm. 2080 de 6 de abril de 1976. Esta se creó con el propósito de atender las prácticas desleales en el ajuste de reclamaciones. Específicamente, el Artículo 7 versa sobre los métodos para un ajuste rápido y equitativo. Al respecto, dispone que en los casos en los cuales no exista controversia sobre uno o varios aspectos de la reclamación, deberá realizarse el pago correspondiente, independientemente de la existencia de una controversia en cuanto a otros aspectos de la reclamación.

De otra parte, la Regla 47(7)(d) del *Reglamento del Código de Seguros* dispone expresamente que cuando "no exista controversia sobre uno o varios aspectos de la reclamación, se deberá hacer el pago correspondiente, independientemente de que exista una controversia en cuanto a otros aspectos de la reclamación, siempre que el mismo se pueda efectuar sin perjuicio de ambas partes".

Una aseguradora está obligada por ley a "notificar una oferta razonable". *Íd.,* pág. 634. Por ello, "ante un reclamo judicial", una aseguradora no puede "denegar partidas que en su ajuste inicial entendió procedentes". *Íd.,* pág. 636. Es decir, que la aseguradora no puede retractarse de este ajuste, ya que fue realizado y comunicado como parte de su obligación de resolver la reclamación al amparo del Código de Seguros. *Íd.* Además, esto no constituye una oferta que puede ser retirada si la otra parte no la acepta, como sucede en otros contextos donde se intenta negociar un posible contrato de transacción. *Íd.* El razonamiento de esta decisión se fundamentó en que el ajuste de una reclamación no se produce con la intención de finalizar una controversia sino más bien se trata de una obligación prexistente proveniente de una ley. *Íd.*

Finalmente, en *Feliciano Aguayo v. MAPFRE,* 207 DPR 138 (2021)*,* el Tribunal Supremo concluyó que, cuando la aseguradora envía una oferta razonable al asegurado, la misma constituye un estimado de los daños. Asimismo, consideró que dicha oferta

razonable se considera "un reconocimiento de deuda al menos en cuanto a las sumas ofrecidas como ajuste". *Íd.*, pág. 165.

## H

Las costas son "los gastos, necesariamente incurridos en la tramitación de un pleito o procedimiento, que un litigante debe reembolsar a otro por mandato de ley o por determinación discrecional del juez". *ELA v. El Ojo de Agua Development*, 205 DPR 502, 527 (2020); citando a R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, pág. 426. Su propósito es resarcir a la parte victoriosa los gastos necesarios y razonables incurridos durante el litigio. *Rosario Domínguez v. ELA*, 198 DPR 197, 211 (2017); *Maderas Tratadas v. Sun Alliance*, 185 DPR 880, 934 (2012); *Comisionado v. Presidenta*, 166 DPR 513, 518 (2005). El Tribunal Supremo ha expresado que las costas se justifican debido a que el derecho de la parte vencedora "no debe quedar menguado por los gastos en que tuvo que incurrir sin su culpa y por culpa del adversario". *Garriga, Jr. v. Tribunal Superior*, 88 DPR 245, 253 (1963).

La Regla 44.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1, rige la concesión de costas en nuestro ordenamiento jurídico. Dicha regla establece lo siguiente:

> (a) *Su concesión.* — **Las costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación o revisión**, excepto en aquellos casos en que se disponga lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que una parte litigante debe reembolsar a otra.
>
> (b) *Cómo se concederán.* La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorándum de todas las partidas de gastos y desembolsos necesarios en que se incurrió durante la tramitación del pleito o procedimiento.

(Negrillas suplidas).

El propósito de la Regla 44.1(a) de Procedimiento Civil, *supra*, es resarcir a la parte victoriosa los gastos necesarios y razonables incurridos durante el litigio. *Madreras Tratadas v. Sun Alliance*, 185 DPR 880, (2012); *Auto Servi, Inc. v. E.L.A.*, 142 DPR 321, 326 (1997) y *Garriga, Jr. v. Tribunal Superior*, 88 DPR 245, 253 (1963).

El Tribunal Supremo de Puerto Rico ha expresado que las costas se justifican debido a que el derecho de la parte vencedora "no debe quedar menguado por los gastos en que tuvo que incurrir sin su culpa y por culpa del adversario". *Maderas Tratadas v. Sun Alliance, supra*, y *Garriga Jr. v. Tribunal Superior, supra.* Esta norma procesal tiene dos propósitos; a saber: restituir lo que una parte perdió por hacer valer su derecho al ser obligada a litigar y "penalizar la litigación inmeritoria, temeraria, o viciosa [...]". *Auto Servi, Inc. v. E.L.A., supra*, a la pág. 327; *Garriga Jr. v. Tribunal Superior, supra*, a la pág. 253. Una vez reclamadas, la imposición de costas a la parte perdidosa es mandatoria. *Blás v. Hosp. Guadalupe*, 146 DPR 267, 337 (1998).

Nuestro Tribunal Supremo ha reconocido que de "la Regla 44.1 de Procedimiento Civil, *supra*, no surge una definición precisa del concepto 'parte victoriosa', que se ajuste a toda situación de hechos". *J.T.P. Development Corp. v. Majestic Realty Corp.*, 130 DPR 456, 464 (1993); *E.L.A. v. El Ojo de Agua Dev., Inc., supra*, pág. 533. Sin embargo, ha expresado que "la parte victoriosa es aquella a cuyo favor se resuelve una reclamación independiente, *a los fines de esa reclamación*, aun cuando en el litigio se hayan acumulado otras reclamaciones". *J.T.P. Development Corp. v. Majestic Realty Corp., supra*, pág. 465.

En lo pertinente a los honorarios de abogado que proceden a raíz de una oferta de sentencia, la Regla 35.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 35.1, dispone, lo siguiente:

> En todo caso en que **la sentencia que obtenga finalmente la parte a quien se le hizo la oferta sea igual o menos favorable**, ésta tendrá que pagar las costas, los gastos **y los honorarios de abogado incurridos con posterioridad a la oferta.**

(Negrillas suplidas).

Al evaluar los criterios dispuestos en la Regla 35.1 de Procedimiento Civil, *supra*, los tribunales deben considerar factores tales como la suma ofrecida, los términos de la oferta, la controversia planteada y la etapa de los procedimientos al momento en que se realiza. *Morell Corrada v. Ojeda,* 151 DPR 864, 882 (2000). Si la oferta es rechazada, esta se considera retirada. En fin, se trata de una medida fundamentalmente punitiva. *Morell Corrada v. Ojeda*, supra, pág. 878.

En lo pertinente, mediante una *Sentencia* emitida en *Rivera Álvarez v. El Vocero*, 160 DPR 327 (2003), el Tribunal Supremo expidió el *certiorari* y dejó sin efecto una adjudicación por concepto de honorarios de abogado, impuesta por el foro *a quo*, conforme a la Regla 35.1 de Procedimiento Civil, *supra*. Así, por su carácter altamente persuasivo, aludimos a lo expresado en la opinión de conformidad emitida por el Juez Asociado Corrada del Río,[25] quien formuló un análisis en el que distinguió la Regla 35.1 de la 44.1. En específico, dispuso lo siguiente:

> A diferencia de la Regla 44.1(d) de Procedimiento Civil – que expresamente requiere una previa determinación de temeridad para la imposición del pago de honorarios de abogado-, la Regla 35.1 establece un mecanismo separado de la Regla 44.1(d) encaminado a sancionar al demandante que rechaza una oferta de sentencia razonable, obligándole a pagar los honorarios incurridos con posterioridad a la oferta. [...]
>
> Si bien ambas reglas pautan para la imposición de honorarios de abogado, **la Regla 35.1 claramente presupone que el rechazar una oferta *razonable* es una conducta temeraria *per se*.** Por lo cual, **la imposición del pago de honorarios de abogado es automática** por proseguirse innecesariamente un pleito que pudo evitarse o concluirse en una etapa temprana.

*Rivera Álvarez v. El Vocero*, supra, pág. 336. (Negrillas suplidas).

---

[25] A esta opinión de conformidad se unieron los Jueces Asociados, Fuster Berlingeri y Rivera Pérez.

### III

### A

A continuación, comenzamos con la discusión de los señalamientos de error formulados por las apelantes en el recurso número TA2026AP00120. Mediante el primero de estos, las apelantes adujeron que el foro primario incidió en su apreciación de la prueba presentada durante el juicio. Este error no se cometió.

Particularmente, en lo referente a la primera visita que el perito Fried llevó a cabo en la propiedad, la parte apelante cuestiona la determinación de hechos número 74. Mediante esta, el foro *a quo* determinó lo siguiente:

> Para la fecha de esta primera visita, los exteriores se habían pintado recientemente, y se habían reparado las verjas de algunas áreas. Sin embargo, no se presentó prueba documental ni testifical que acredite estas reparaciones, su costo ni que fueran como consecuencia del paso del Huracán María y no parte del mantenimiento constante al que aludió la Administradora.

Contrario a lo alegado por las apelantes en su *Alegato Suplementario,* en la determinación de hechos número 74, el foro *a quo* no negó la ocurrencia de daños a los exteriores y las verjas. De hecho, el perito de MAPFRE incluyó en su estimado las cuantías necesarias para pintar los exteriores y reparar las verjas. Por tanto, la existencia de ciertos daños a dichas áreas no estuvo en controversia. Sin embargo, las apelantes no presentaron prueba testifical ni documental que acreditase las reparaciones a la pintura y verjas, así como su costo. Es decir, que el récord carece de prueba que tienda a demostrar los gastos en que las apelantes incurrieron, si alguno, en dichas reparaciones. Ante dicho vacío, el foro primario le confirió entera credibilidad a la valoración realizada por el perito de MAPFRE e incluyó dicha cuantía en la *Sentencia.*

Sobre estos extremos, las apelantes consideran que el foro *a quo* debió concluir que la cotización sobre la cual Álvarez Torre declaró, es la evidencia de que dicha reparación se hizo, al costo que

indica la cotización. Nótese, que el objetivo de la mencionada cotización[26] era obtener un estimado de costos para pintar el proyecto, debido a los daños causados por el Huracán María a la propiedad. Sin embargo, de dicho testimonio se desprende que dicha cotización no constituye una factura, ni un contrato.[27]

Cabe destacar que, en la determinación de hechos número 78, referente a las ventanas del complejo de vivienda, el foro primario acogió el estimado de ROV. En este, se provee el detalle por apartamento de las ventanas que requerían ser reparadas o reemplazadas. Sobre este particular, el foro *a quo* no adjudicó credibilidad al testimonio del perito Fried, por entender que este, contrario a ROV, las examinó desde el exterior e infló la partida correspondiente a las ventanas.

En lo pertinente, las apelantes sostienen que el foro primario realizó dos determinaciones de hechos erróneas sobre las ventanas del complejo; la número 78 y la 80. Sin embargo, tras evaluar el testimonio del perito Fried, el foro *a quo* consignó varias inconsistencias en dichas determinaciones, que incidieron en la poca credibilidad y el valor probatorio mínimo que adjudicó a dicho perito. A continuación, y para fines de abonar a esta discusión, reproducimos el texto de las mencionadas determinaciones de hechos:

> 78. Todas las ventanas que el Sr. Fried revisó, con la excepción de las del apartamento al cual entró, que estaba deshabitado, fueron vistas desde el exterior, ello contrario a ROV que en los apartamentos que tuvo acceso las revisó desde el interior y las manipuló para corroborar su operación.
>
> […]
>
> 80. Sin embargo, luego en redirecto [el Sr. Fried] cambió su testimonio para declarar que solo la mitad de las ventanas requerían ser reemplazadas, sin precisar cuáles, y que la razón para incluirlas todas en su estimado es para facilitar

---

[26] La cotización fue admitida en evidencia y es el *exhibit* 7 de la prueba documental de la parte demandante.

[27] Véase, TPO del 21 de octubre de 2025, testimonio de Álvarez Torre, a la pág. 91, líneas 9-11.

el trabajo. El estimado de ROV, único que obra marcado como Exhibit en el expediente judicial, sí detalla por apartamento las ventanas que requieren ser reparadas o reemplazadas. Por su parte, resulta cuestionable y pone en duda su credibilidad, que aludiera el Perito a que infló la partida de ventanas, con el impacto de aumento que ello tiene en el estimado a favor del asegurado, y en contra de la aseguradora, "para facilitar el trabajo".[28]

De este modo, resalta cómo el perito Fried admitió que solo la mitad de las ventanas que inspeccionó -entiéndase, el 20% del total de las ventanas del edificio- requerían ser reemplazadas. Respecto al 20% de las ventanas que inspeccionó, opinó que la mitad requerían reemplazo. No obstante, y a pesar de ello, su estimado incluyó el reemplazo de todas las ventanas objeto de su inspección.

En cuanto al valor probatorio atribuido por el foro primario a la prueba pericial desfilada, es preciso destacar que los testimonios del perito Fried y el ingeniero Melo no se basaron en hechos o información suficiente que resultaran de ayuda para el foro *a quo*. Ello, pues surge de la TPO que ambos peritos de las apelantes declararon de forma muy general sobre los daños que pudo haber causado el Huracán María a la propiedad de Villa Blanca. De igual forma, estos no proveyeron al foro *a quo* prueba admisible que explicara la metodología de inspección utilizada. Tampoco proveyeron prueba que contribuyera a una identificación detallada, así como fotos de cada uno de los daños que dicha parte alega tiene su propiedad. De modo similar, era necesario proveer un desglose de todas las partidas de reparación que requiere el edificio y las medidas de los daños, así como el precio unitario de cada trabajo propuesto.

Además, ninguno de los peritos de las apelantes inspeccionó en detalle la propiedad. El ingeniero Melo visitó Villa Blanca por primera vez tan solo dos días antes de brindar su testimonio. Por su parte, el perito Fried la visitó una vez en 2024 y, por segunda vez,

---

[28] Véase, *Sentencia* apelada, pág. 14. Entrada núm. 258 de SUMAC TPI en el caso núm. CG2029CV0331.

tres días antes de su declaración en juicio. De igual forma, el perito Fried, quien debía fungir como estimador de daños de Villa Blanca, solo entró a un apartamento del complejo, de un total de 100 unidades.

Con este proceder, el perito Fried admitió que incluyó en su informe partidas de alegados costos incurridos en mitigación de daños, ascendentes a $352,849.93; únicamente guiado por un listado que le proveyera Villa Blanca. Es decir, que este perito reconoció que no vio cotización, estimado y mucho menos factura o cheque alguno en el que se evidenciara que los trabajos que consideró como de "mitigación", tan siquiera fueron realizados y pagados a dicho precio. Conforme a lo anterior, concluimos que las apelantes no demostraron que los testimonios del perito Fried y del ingeniero Melo fuesen el resultado de principios y métodos confiables.

Según discutido anteriormente, el foro primario atribuyó credibilidad y valor probatorio al testimonio pericial del ingeniero Sanjurjo, perito de MAPFRE. Este perito hizo un estudio de los estimados de ROV y Campeon Claims y emitió su opinión a base de un análisis comparativo. Sobre estos extremos, el ingeniero Sanjurjo preparó, además, un informe pericial sobre Villa Blanca, con fecha de 29 de octubre de 2021, para el cual utilizó el estimado de ROV, así como fotografías de las inspecciones, entre otros documentos.[29]

En términos generales, el ingeniero Sanjurjo estableció que la propiedad Villa Blanca tenía daños limitados. Además, observó que había entrado agua por las ventanas y que había algunas desajustadas. La opinión pericial del ingeniero Sanjurjo fue que la propiedad Villa Blanca no sufrió daños mayores. Entiéndase, que las reparaciones necesarias eran menores y consistían en pintura

---

[29] Véase, determinaciones de hechos núm. 175-189 de la *Sentencia* apelada, págs. 23-24. Entrada núm. 258 de SUMAC TPI en el caso núm. CG2019CV03331.

interior y exterior, así como en la reparación de algunas ventanas y puertas. Su opinión pericial, a la cual el foro primario le dio entera credibilidad, estuvo basada en las inspecciones de ROV a las unidades de vivienda, realizadas del 28 al 30 de diciembre de 2020 y los días 16 y 17 de septiembre de 2021.[30] En lo pertinente a los techos, el perito opinó que estos se encontraban en buenas condiciones, tras haber sido reparados luego del paso del Huracán María.[31]

A base del estimado total de daños de ROV, el ingeniero Sanjurjo concluyó, tanto en su informe pericial como en el testimonio vertido, que los daños causados por el Huracán María a Villa Blanca ascienden a $222,972.99. Reiteramos que el foro primario dio entera credibilidad a dicho testimonio.[32]

De este modo, coincidimos con la apreciación de la prueba pericial. Particularmente, suscribimos la conclusión del foro *a quo* a los fines de que el ingeniero Sanjurjo refutó efectivamente las conclusiones de los peritos de Villa Blanca y demostró que estas no estaban basadas en la práctica de la ingeniería y la industria de la construcción local. Añadimos que las bases del testimonio del ingeniero Sanjurjo, sostenidas en la práctica de la ingeniería y la industria de la construcción local, ofrecen mayores garantías de confiabilidad que, a su vez, se traducen en un valor probatorio mayor.

Sobre el particular, el foro primario adjudicó también credibilidad al testimonio de Acevedo Avilés, sobre la manera en que se aplicaron los términos y condiciones de la póliza a la reclamación judicial. De este modo, se estimó razonablemente que el ajuste de la

---

[30] Véase, determinaciones de hechos núm. 189-190 de la *Sentencia* apelada, pág. 24. Entrada núm. 258 de SUMAC TPI en el caso núm. CG2019CV03331.
[31] Véase, determinaciones de hechos núm. 192 de la *Sentencia* apelada, pág. 24. Entrada núm. 258 de SUMAC TPI en el caso núm. CG2019CV03331.
[32] Véase, determinaciones de hechos núm. 193-194 de la *Sentencia* apelada, pág. 25. Entrada núm. 258 de SUMAC TPI en el caso núm. CG2019CV03331.

reclamación judicial sometido en evidencia era correcto y válido y, sobre ello, el tribunal dispuso las cuantías que procedían.

Es preciso destacar que, como bien determinó el foro *a quo*, para efectuar el ajuste, Acevedo Avilés utilizó el estimado de daños rendido por los peritos de MAPFRE, cuyo total ascendió a $222,972.99. Además, este aplicó las condiciones, limitaciones y exclusiones de la póliza, así como los deducibles.

Nótese, que la póliza establece que la aseguradora solo pagará los gastos incurridos en cumplir con ordenanzas o leyes que estuvieran vigentes al momento de la pérdida. Dicho pago solo procede cuando el edificio haya sido reparado, reconstruido o remodelado para cumplir con tales leyes.

En el caso que nos ocupa, Villa Blanca no efectuó reparación alguna que activase el endoso de "Ordinance or Law". Es evidente que las reparaciones realizadas respondieron a los daños recibidos y no como actualizaciones o *upgrades*, con el único propósito de cumplir con una ordenanza o ley.

En lo pertinente, el inciso "a" de la sección 7 del "*Building and Personal Property Coverage Form*", titulada *Valuation,* dispuso que se determinará el valor de los daños de conformidad con su valor real en efectivo al momento de la pérdida o daño. Es decir que el ajuste de la pérdida se haría en consideración al valor real en efectivo de la propiedad, concepto conocido como "Actual Cash Value" (ACV). A esos fines, se entiende por valor real en efectivo o ACV, el valor monetario de un bien, considerando la condición del bien al momento de la pérdida.[33]

Para que se activara la cobertura opcional de costo de reemplazo en sustitución de aquella de ACV, de manera que surgiera la obligación de pago de MAPFRE sobre esa base, las apelantes

---

[33] Véase, determinaciones de hechos núm. 224-226 de la *Sentencia* apelada, pág. 28. Entrada núm. 258 de SUMAC TPI en el caso núm. CG2019CV03331.

omitieron cumplir con dos condiciones. Estas consistían en: 1) reparar efectivamente o reponer los bienes perdidos o dañados; y 2) hacerlo tan pronto como fuera razonablemente posible después de la pérdida o daño. Entiéndase, estas no proveyeron la factura del proveedor. Tampoco produjeron evidencia de pago, ni del daño sufrido. Todo esto era indispensable para que procediera el reembolso bajo la cobertura de RCV. En fin, no acreditaron las condiciones necesarias para que dicha cobertura les aplicara. Ante ese cuadro de hechos probados, el foro *a quo* no erró al acoger el estimado trabajado por el perito de MAPFRE, a precios ACV, considerando la condición del bien al momento de la pérdida.[34]

Conforme al mandato claro de la póliza, la valoración de la propiedad cubierta al costo de reemplazo debe realizarse al momento de la pérdida. Ante dicho lenguaje claro de la póliza, el derecho de un asegurado a recibir un pago por daños reclamados conforme a una póliza de seguro de propiedad como resultado de una pérdida cubierta, se determina en el momento de la pérdida o daño. En consecuencia, fue improcedente el remedio solicitado por las apelantes.

La parte apelante tampoco proveyó prueba ni acreditó los gastos incurridos, si alguno, dentro de la partida de condiciones generales. De este modo, no incidió el foro primario al realizar tal descuento.

En fin, las determinaciones del foro primario sobre la prueba pericial están sustentadas por la prueba desfilada en el juicio. Asimismo, su valor probatorio fue adjudicado por el foro *a quo,* luego de evaluar la confiabilidad y credibilidad del testimonio pericial, conforme a los criterios de la Regla 702 de Evidencia, *supra.*

---

[34] Véase, determinaciones de hechos núm. 226-228 de la *Sentencia* apelada, págs. 28-29. Entrada núm. 258 de SUMAC TPI en el caso núm. CG2019CV03331.

Advertimos, además, que las apelantes no transcribieron la totalidad del juicio. Así también, excluyeron de la reproducción de la prueba oral, el testimonio del licenciado Oronoz Rodríguez y el de la Arq. Maryenid Abreu Canales, ambos testigos de MAPFRE. Para que este foro esté en posición de evaluar un señalamiento de error que gira en torno a la apreciación y suficiencia de la prueba desfilada, la Regla 19 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 19, dispone que la parte apelante someterá una transcripción o una exposición narrativa de la prueba oral.

De este modo, en ausencia de la reproducción de la prueba oral sobre ambos testimonios, este Tribunal está impedido de ejercer su función revisora respecto al contenido de estos. Cabe destacar que la revisión de la sentencia sobre estos extremos será entonces conforme a su contenido. En consideración a lo anterior, en dicho ejercicio, la determinación de credibilidad del tribunal sentenciador "es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada ya que él fue quien oyó y vio declarar a los testigos". Véase, *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987).

En conclusión, en el ejercicio de nuestra función revisora sobre la apreciación de la prueba oral y la prueba pericial, mantenemos la deferencia hacia la adjudicación de credibilidad conferida por el foro primario a los testigos. En esa dirección, adoptamos igualmente, el criterio del foro primario en cuanto al valor probatorio atribuido a la prueba pericial presentada por las partes. En consecuencia, validamos que la prueba pericial desfilada por MAPFRE fue la que asistió adecuadamente al tribunal. No cabe duda de que esta cumplió con los criterios de confiabilidad, en la medida que se cimentó, tanto en la práctica de la ingeniería y en la

industria de la construcción local, así como en la totalidad de la prueba desfilada en el juicio.

En virtud del segundo señalamiento de error formulado, las apelantes plantearon que el foro primario erró al no concederle intereses por mora y honorarios a su favor, al amparo del Código de Seguros. Este error tampoco se cometió.

En lo pertinente al reclamo de honorarios, en *Consejo de Titulares de 76 Kings Court v. MAPFRE* PRAICO *Ins. Co.,* 208 DPR 1018 (2022), el Tribunal Supremo resolvió que la notificación previa del *Formulario de Notificación Previo a Entablar una Acción Civil a Tenor con el Artículo 27.164 del Código de Seguros de Puerto Rico* (Formulario), es de carácter jurisdiccional. De manera cónsona, concluyó que el incumplimiento con el término de sesenta (60) días disponible para permitirle a la aseguradora subsanar las violaciones allí notificadas, acarrea la desestimación de las reclamaciones presentadas, al amparo de los Artículos 27.164 y 27.165 del Código de Seguros, *supra.*

Las causas de acción conforme los citados Artículos 27.164 y 27.165 únicamente proceden cuando la aseguradora no subsana lo notificado dentro del plazo de sesenta (60) días establecido en el Artículo 27.164. Por tanto, la acción civil instada antes de transcurrir el mencionado término, aun luego de haber notificado adecuadamente el Formulario, despoja al tribunal de autoridad para atender la reclamación, que a su vez es de carácter jurisdiccional, ya que nunca se configuró la causa de acción.

En el presente caso, las apelantes presentaron su reclamación sin haber notificado el Formulario a la Oficina del Comisionado de Seguros (OCS) y a MAPFRE. Consecuentemente, no procede su reclamo de honorarios de abogado, al amparo del Artículo 27.165, *supra.* Al respecto, concluimos que las apelantes incumplieron con los requisitos jurisdiccionales previstos por el Código de Seguros

para presentar una causa de acción al amparo del Artículo 27.165, *supra*. Así, están impedidas de recobrar los honorarios de abogado que surgen del citado artículo.

De otra parte, en *Consejo Titulares del Condominio Playa Azul II v. MAPFRE*, supra, el Tribunal Supremo resolvió, además, que la causa de acción bajo el Artículo 27.165, *supra*, solo surge cuando la aseguradora omite subsanar el incumplimiento dentro del término de sesenta (60) días. En consecuencia, concluimos que el foro primario actuó conforme a derecho al denegar los honorarios solicitados por las apelantes.

Respecto a los intereses por mora, cabe destacar que la aseguradora notificó un ajuste y oferta que detallaba, tanto los daños reconocidos como la aplicación de los deducibles correspondientes. Una vez iniciado el litigio, el asegurado volvió a someter documentos que variaron su reclamación; esta vez a través del informe de sus peritos. De este modo, la aseguradora cumplió nuevamente con su obligación de investigar, ajustar y hacer una oferta razonable.

De otra parte, previo a la *Sentencia* apelada, no había deuda ni suma alguna que pudiera ser catalogada como líquida, vencida y exigible. En la *Demanda* tampoco se alegó que existieran deudas líquidas y exigibles de MAPFRE hacia las apelantes. Nótese que, en la *Demanda*, estas tampoco solicitaron la imposición de intereses por mora sobre alguna cuantía.

En cuanto al ajuste, la prueba testifical y documental demostró que MAPFRE recibió notificación de la pérdida, acusó recibo, investigó y ajustó la pérdida y efectuó ofertas. Entre estas, figuró una cursada por el licenciado Oronoz Rodríguez, la cual no fue contestada por las apelantes.[35] Dichas acciones de oferta y

---

[35] Véase, *Sentencia* apelada, pág. 56. Entrada núm. 258 de SUMAC TPI en el caso núm. CG2019CV03331.

ajuste constituyen buena fe por parte de MAPFRE y una demostración de cumplimiento de su obligación contractual bajo la póliza.

Asimismo, ni la póliza de seguro expedida por MAPFRE, ni el Código de Seguros, los reglamentos, las cartas normativas de la OCS, así como tampoco el Código Civil por ser derecho supletorio disponen que proceda el pago de la cuantía del ajuste cuyas partidas las apelantes consideran en controversia. Entiéndase que, el estar en controversia el valor asignado a las partidas en el ajuste de MAPFRE, las cuantías allí desglosadas no constituían, en ese momento, deudas líquidas, vencidas y exigibles. Ello, pues de ordinario una reclamación de indemnización bajo un seguro de propiedad no se insta para reclamar una suma líquida.

Ante esa realidad, coincidimos con MAPFRE en que el ajuste del estimado de daños preparado por los peritos contratados por esta no es producto del quebrantamiento o incumplimiento de alguna obligación. En consecuencia, no procede la solicitud de intereses por mora instada por las apelantes, respecto al monto del ajuste del estimado de daños preparado por los peritos de MAPFRE.

Mediante el tercer error señalado, las apelantes adujeron que el foro primario incidió al denegar su solicitud de nuevo juicio. Ello, dado que, a juicio de las apelantes, la *Sentencia* apelada demostró la necesidad de presentar el testimonio de los cinco testigos que el foro primario excluyó tres semanas antes del comienzo del juicio.

En esencia, las apelantes arguyen que los testigos que anunciaron por primera vez en el Informe de Conferencia con Antelación a Juicio, y los cuales MAPFRE no pudo deponer, eran esenciales. Sin embargo, la exclusión de dichos testigos no constituyó una sanción, sino una consecuencia lógica de no haberlos anunciado durante el periodo de descubrimiento de prueba.

La Regla 23.1(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1(a) dispone que una parte podrá requerir a cualquier otra parte que exprese la identidad y dirección de personas que conozcan hechos pertinentes. Asimismo, el inciso (b) de la misma regla le permite a una parte requerir de la otra una lista de los testigos que se propone utilizar en el juicio. De otra parte, la Regla 23.1€ de Procedimiento Civil, *supra*, obliga a las partes a actualizar, corregir o enmendar la prueba que se ha descubierto, así como a notificarla, so pena de excluir en el juicio la prueba no actualizada.

En fin, las apelantes incumplieron con lo dispuesto en la Regla 23.1 de Procedimiento Civil, *supra.* Por tanto, es forzoso concluir que fue la propia inacción de las apelantes, al omitir anunciar dichos testigos durante el descubrimiento de prueba, lo que provocó su exclusión. En consecuencia, no se justifica la celebración de un nuevo juicio, a los únicos fines de incluir a estos testigos.

**B**

El recurso de *certiorari* es el vehículo procesal adecuado para procurar la revisión de la *Resolución* recurrida en el recurso número TA2026CE00176. Ello, por tratarse de un dictamen emitido en etapa posterior a la *Sentencia* apelada. Así, luego de evaluar el recurso a la luz de los criterios de la Regla 40 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, ejercemos nuestra discreción revisora a los fines de expedir el auto discrecional solicitado y modificar la determinación recurrida. Veamos.

A continuación, procedemos a discutir los dos señalamientos de error formulados por las apelantes en el recurso número TA2026CE00176. De este modo, discutiremos de manera conjunta ambos planteamientos, debido a que se encuentran estrechamente relacionados. Mediante los dos señalamientos de error, las apelantes plantearon que el foro primario erró al concederle costas a MAPFRE, a pesar de esta ser la parte perdidosa del caso. Ello, debido a que,

en virtud de la *Sentencia* apelada, el foro primario concedió un remedio a favor de las apelantes y le ordenó a la apelada resarcirles por los daños que el Huracán María les ocasionó. Asimismo, que incidió al otorgar de manera automática a favor de MAPFRE una cuantía correspondiente a honorarios de abogado, al amparo de la Regla 35.1 de Procedimiento Civil, *supra*, a pesar de que el foro *a quo* no realizó determinación alguna de temeridad.

En cuanto a las costas, las apelantes sostienen que, debido a que el foro primario le ordenó a MAPFRE el pago de unas sumas contempladas en el ajuste, no se les puede catalogar de parte perdidosa en la *Sentencia* apelada. Por el contrario, las apelantes aseguran ser parte victoriosa, en la medida que resultaron acreedoras a un remedio por concepto de los daños causados por el Huracán María, cubiertos por la póliza y objeto el ajuste. Así, consideran que el foro *a quo* erró al denegar su solicitud de costas, a pesar de haber declarado No Ha Lugar la *Demanda*. De manera cónsona, razonan que MAPFRE no debe considerarse parte victoriosa.

Si bien puede argumentarse que las apelantes no prosperaron en su causa de acción, lo cierto es que el foro primario consideró, luego de aquilatar detenidamente la prueba ante sí, que la propiedad de estas había sufrido daños a causa del Huracán María. Asimismo, concluyó que los daños, luego de ser ajustados conforme a los términos y condiciones de la póliza, ascendían a $118,256.54, y que MAPFRE venía obligado a satisfacer dicha suma.

En consideración a lo anterior, y ante el silencio que la Regla 44.1 de Procedimiento Civil, *supra*, guarda respecto a lo que constituye ser parte victoriosa en una reclamación, no podemos ignorar que las apelantes obtuvieron un remedio parcial a su favor.[36]

---

[36] Nuestro Tribunal Supremo ha reconocido que de "la Regla 44.1 de Procedimiento Civil, *supra*, no surge una definición precisa del concepto "parte

Ante ese cuadro de hechos probados, en el cual ambas partes resultaron ser parcialmente victoriosas en la *Sentencia* apelada, concluimos que el foro primario erró al conceder el pago de costas a favor de MAPFRE.

Ahora bien, concluimos que no incidió el foro primario al imponer honorarios a favor de MAPFRE al amparo de la Regla 35.1 de Procedimiento Civil, *supra*. Dicha regla es clara al establecer que la parte demandante es responsable del pago de los honorarios de abogado incurridos con posterioridad a una oferta de sentencia. Es decir, en este caso, a partir del 1 de octubre de 2025.

En el presente caso, el 1 de octubre de 2025, MAPFRE notificó a las apelantes, por correo certificado con acuse de recibo, una oferta de sentencia, al amparo de la Regla 35.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 35.1, por la suma de $250,000.00. Dicha parte no aceptó la oferta y, mediante la *Sentencia* apelada, el foro *a quo* declaró No Ha Lugar la *Demanda*, pero le ordenó a MAPFRE a pagarle a las apelantes la suma de $118,256.54. Al ser dicha suma menos favorable que la oferta que MAPFRE les había cursado, procedía imponer el pago de los honorarios de abogado incurridos con posterioridad a dicha oferta.

En consecuencia, concluimos que procede modificar la *Resolución* recurrida. Ello, a los únicos fines de eliminar la obligación impuesta a las apelantes de pagarle a MAPFRE la suma de $141,904.35, por concepto de costas, al amparo de la Regla 44.1 de Procedimiento Civil, *supra*. En cuanto a la imposición de la suma de $19,250.00, concedida a favor de MAPFRE para resarcir sus

---

victoriosa" que se ajuste a toda situación de hechos". *J.T.P. Development Corp. v. Majestic Realty Corp.*, 130 DPR 456, 464 (1993); *E.L.A. v. El Ojo de Agua Dev., Inc.*, *supra*, pág. 533. Sin embargo, ha expresado que "la parte victoriosa es aquella a cuyo favor se resuelve una reclamación independiente, *a los fines de esa reclamación*, aun cuando en el litigio se hayan acumulado otras reclamaciones". *J.T.P. Development Corp. v. Majestic Realty Corp.*, supra, pág. 465.

honorarios de abogado, de conformidad con la Regla 35.1 de Procedimiento Civil, *supra*, se confirma la *Resolución* recurrida.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia* apelada, en virtud del recurso número TA2026AP00120. En cuanto a la *Petición de certiorari* número TA2026CE00176, expedimos el auto discrecional y modificamos la *Resolución* recurrida, a los únicos fines de revocar la concesión de costas por la suma de $141,904.35, a favor a MAPFRE.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones